**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| HEATHER S. L. B., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. 22-CV-537-MTS |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

Plaintiff Heather S. L. B. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work

---

[1] Effective December 20, 2023, pursuant to Fed. R. Civ. P. 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of 42 U.S.C. § 405(g).

experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account her age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: first, whether the correct legal standards were

2

applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). A court, however, may not re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On March 5, 2020, Plaintiff filed an application for Title II disability insurance benefits (42 U.S.C. § 401, *et seq.*) under the Social Security Act. (R. 10, 203-06, 207-08). She alleged an inability to work beginning on June 27, 2019, due to limitations resulting from degenerative disc disease, bulging discs, chronic back pain, hip bone on bone, fibromyalgia, irritable bowel syndrome, anxiety, and high blood pressure. (R. 10, 222). Plaintiff was forty years old at the time of the ALJ's decision. (R. 22, 218). She obtained a GED and had past relevant work as a customer service representative and a customer service technical support representative. (R. 21, 62, 223).

Plaintiff's application was denied both initially and upon reconsideration. (R. 10, 134-37, 139-45). At Plaintiff's request, ALJ Joseph R. Doyle conducted an administrative hearing on

December 3, 2021. The hearing was held by teleconference pursuant to COVID-19 procedures. (R. 10, 34-68). ALJ Doyle issued a decision on March 2, 2022, denying benefits and finding Plaintiff not disabled. (R. 10-23). Plaintiff sought review by the Appeals Council, which it denied on October 13, 2022. (R. 1-6). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since June 27, 2019, the alleged onset date. (R. 12). At step two, he found Plaintiff suffered from severe impairments of degenerative disc disease of the cervical and lumbar spine and fibromyalgia. *Id*. The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 15-16). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work as defined in 20 CFR 404.1567(b)" with the following additional limitations:

> [T]he claimant is limited to only occasional climbing [of] ladders, ropes, or scaffolds, climbing ramps or stairs, stooping, kneeling, crouching, and crawling. The claimant is limited to only occasional exposure to hazards, defined as work with machinery having moving mechanical parts, use of commercial vehicles, and exposure to unprotected heights.

(R. 16).

At step four, the ALJ determined Plaintiff had past relevant work as a customer service representative and a customer service technical support representative. (R. 21). Based on the testimony of a vocational expert ("VE"), the ALJ concluded Plaintiff could perform both past positions as she actually performed them and as generally performed in the national economy. (R. 21, 62-63). Alternatively, the ALJ made a step-five determination that Plaintiff could perform the

representative jobs of cashier, merchandise marker, and mail room clerk, all of which he found existed in significant numbers in the national economy. (R. 22, 63). As a result, the ALJ found Plaintiff had not been under a disability from June 27, 2019, through the date of the decision. (R. 23).

### Errors Alleged for Review

Plaintiff raises three allegations of error in her challenge to the Commissioner's denial of benefits on appeal: (1) the ALJ failed to properly evaluate the medical source opinions; (2) the ALJ's RFC and hypothetical question "are faulty"; and (3) the ALJ's step-four determination is "legally and factually flawed." (Docket No. 12 at 3-15). For purposes of clarity, the Court addresses Plaintiff's allegations of error in the order set forth below.

### Consideration of the Opinion Evidence

Medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must "articulate" in the decision how persuasive he finds each medical source's opinion by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The

most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[2]

The regulations explain that for supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(1), 416.920c(c)(1). For consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 1520c(c)(2), 416.920c(c)(2).

Plaintiff first argues the ALJ's supportability and consistency analysis of the opinion of consulting psychologist Denise LaGrand, Psy.D., was improper. She asserts the ALJ failed to adequately explain why he did not include Dr. LaGrand's moderate mental limitations in the RFC, particularly limitations regarding pace. She further contends the ALJ improperly relied upon Plaintiff's lack of formal mental health treatment and her daily activities as reasons for finding Dr. LaGrand's opinion unpersuasive.[3]

The ALJ specifically considered Dr. LaGrand's examination and opinion in conjunction with the opinions of the reviewing psychologists. For instance, he noted Dr. Snider included some

---

[2] Generally, the ALJ is not required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. *Id.*, §§ 404.1520c(b)(3), 416.920c(b)(3).

[3] Plaintiff indicates she "has no arguments regarding the ALJ's findings that the non-treating, non-examining mental reviewers at the State agency are unpersuasive. They are both internally inconsistent as the ALJ properly found." (Docket No. 12 at 4). However, contrary to Plaintiff's statement, a review of the ALJ's decision reveals that he found the opinion of Brian Snider, Ph.D.,

moderate ratings, but ultimately determined Plaintiff suffered from only mild limitations and her mental impairments were non-severe. (R. 19, 106-08). He discussed Dr. Cooley's determination that Plaintiff's mental impairments were severe and his assessment of mental limitations, including restrictions for interaction with the public and maintaining concentration for complex tasks. (R. 19, 121-23, 127-30). He noted that Dr. LaGrand examined Plaintiff and determined she "appear[s] to be capable of some work-like tasks if she is able to perform that work at her own pace as she is able[,]" and she found Plaintiff was moderately limited in several work-related activities based on her psychiatric symptoms. (R. 19, 515).

The ALJ then concluded "the State agency psychological consultants' prior medical findings as well as Dr. LaGrand's assessment [are] unpersuasive as their findings lack adequate support in their reports and are otherwise inconsistent with the evidence of record." (R. 19-20). The ALJ provided the following explanation for his conclusion:

> [D]espite offering "moderate" ratings, Dr. LaGrand's examination report noted that the claimant presented fully oriented with pleasant, cooperative, and attentive behavior, euthymic mood, adequate eye contact, normal speech, clear articulation, average ability to understand moderately-complex directions and language, logical and goal-directed thought process, adequate insight and judgment, and variable recall [R. 511-15]. Similarly, Dr. Snider's internally inconsistent findings of "moderate" ratings with non-severe mental impairment offers minimal insight into the claimant's functioning [R. 106-08]. With respect to Dr. Cooley's findings, no specific citations to objective evidence were made, and instead, his assessment relied on Dr. LaGrand's moderate ratings, which lacked adequate support in her examination report [R. 511-15]. Furthermore, as discussed above, the claimant acknowledged several intact activities of daily living from a mental health perspective in her function report, and she presented with normal mental status examination findings during primary and urgent care visits without enrollment in formal psychiatry or psychotherapy during the relevant period of alleged disability [R. 244-51, 404-505, 511-15]. For these reasons, the undersigned found the State

---

"internally inconsistent," but he did not make such a finding regarding the opinion of David Cooley, Psy.D. (R. 20). Moreover, although Plaintiff claims she is not challenging the ALJ's evaluation of the reviewing psychologists' opinions, the Court will discuss them herein to the extent the ALJ addressed them in conjunction with his evaluation of Dr. LaGrand's opinion.

7

agency psychological consultants' prior administrative medical findings and Dr. LaGrand's assessment unpersuasive in this decision.

(R. 20).

The ALJ discussed Dr. LaGrand's opinion in detail and provided specific reasons for finding her opinion unpersuasive. He adequately addressed the evidence supporting his evaluation of the supportability and consistency factors. The ALJ relied upon Dr. LaGrand's mental status examination findings, as well as Plaintiff's mental status examination findings from her treatment providers. He further relied upon Plaintiff's own reports of her functioning, and her lack of formal psychological treatment during the relevant period. The Court therefore finds no error in the ALJ's application of the supportability and consistency factors to Dr. LaGrand's opinion.

Additionally, Plaintiff appears to challenge the ALJ's failure to consider all the factors set forth in 20 C.F.R. § 1520c(c) when considering the medical source opinions. Plaintiff contends the ALJ should have considered the medical sources' area of specialization, relationship to Plaintiff, and other factors. *See* 20 C.F.R. § 404.1520c(c)(3)-(5). However, as stated in the regulation, unless the ALJ determines there are two equally persuasive opinions on an issue, he is not required to explain his consideration of these factors but must explain only the factors of supportability and consistency. *Id.*, § 404.1520c(b)(2), (3). Plaintiff has not suggested such a situation exists in this case, and the ALJ found the opinions unpersuasive. Thus, the ALJ was not required to consider the additional factors.[4]

Further, Plaintiff makes a general argument that the ALJ substituted his own opinion for that of Dr. LaGrand. The Court finds no merit to Plaintiff's argument. While it is true that an

---

[4] In any event, the ALJ's decision reveals that he recognized that Dr. LaGrand examined Plaintiff and acknowledged the state-level psychological consultants' "high level of understanding" of the Social Security disability program. (R. 19-20).

8

"ALJ may not substitute [his] own opinion for that of [Plaintiff's] doctor," *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996), it is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). There is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). In this case, the ALJ's decision demonstrates he did not substitute his own opinion for Dr. LaGrand's opinion. Instead, as discussed herein, he considered the record evidence regarding Plaintiff's mental impairments and determined the RFC.

### Consideration of Plaintiff's Mental Impairments

Plaintiff also contends that the ALJ's hypothetical question to the VE and the RFC "are faulty[,]" because he failed to account for the moderate limitations supported by the opinions of the consulting and reviewing psychologists. She further asserts that even though the ALJ determined her mental impairments were non-severe, he was required to explain in the RFC assessment what limitations resulted from the "mild" limitations with which he assessed Plaintiff when addressing the "paragraph B" criteria at step two.

At step two, in addition to certain physical impairments, the ALJ determined Plaintiff's "medically determinable mental impairments of anxiety disorder and depressive disorder, considered singly and in combination, do not cause more than minimal limitation in the [Plaintiff's] ability to perform basic mental work activities and are therefore non-severe." (R. 12-13). He considered the four areas of mental functioning, the "paragraph B" criteria, and concluded Plaintiff had mild limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (R. 13-14); *see* 20 C.F.R. § 404.1520a(c)(3)-(4). The ALJ relied upon Plaintiff's own reports of her

ability to function, as indicated on her function report, and her mental health treatment, which included taking Xanax and Lexapro prescribed by her primary care provider, but no formal mental health treatment during the relevant period. He also discussed Plaintiff's consistent mental status examinations throughout the relevant period, her reports to Dr. LaGrand during the consultative psychological examination, and Dr. LaGrand's findings on Plaintiff's mental status examination. (R. 13-14, 244-51, 404-505, 511-15, 562-89).

After concluding the Plaintiff's mental impairments were non-severe, the ALJ made the following statements regarding the mental RFC:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(R. 14). He further addressed Plaintiff's non-severe impairments as follows:

> Non-severe impairments can, however, when considered in conjunction with one another and the claimant's severe impairments, affect her [RFC]. In recognition of this fact, and in accordance with Social Security regulations, any such effect that the claimant's non-severe impairments would have had on her ability to function has been considered when formulating her [RFC] (SSR 96-8p).

(R. 15).

As correctly noted by the ALJ, "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4 (July 2, 1996). In fact, mental limitations found at steps two and three do not necessarily translate to work-related functional limitations for purposes of the RFC assessment. *See Suttles v. Colvin*, 543 Fed. Appx. 824, 826 (10th Cir. 2013) (considering a mild limitation at step two for

concentration, persistence, or pace and noting "this court has repeatedly held, albeit in unpublished decisions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps."), citing *Beasley v. Colvin*, 520 Fed. Appx. 748, 754 (10th Cir. 2013) (noting that "[t]he ALJ was under no obligation to include limitations in social functioning in [the] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis."); *see also Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment.").

In *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013), however, the Tenth Circuit Court of Appeals explained that a "conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id*. at 1068-69. At steps four and five, the mental RFC assessment requires "a more detailed assessment" of the "various functions contained in the broad categories" of mental limitations listed at steps two and three. SSR 96-8p, 1996 WL 374184, at *4. Moreover, "the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells*, 727 F.3d at 1065 (emphasis in original), citing 20 C.F.R. § 404.1545(a)(2) ("We will consider all of [a claimant's] medically determinable impairments . . . including [ ] medically determinable impairments that are not 'severe,' . . . when we assess [a claimant's RFC].").

In this case, the ALJ sufficiently considered Plaintiff's anxiety and depression when assessing the RFC. As previously addressed herein, he considered Plaintiff's assessment by consulting psychologist, Dr. LaGrand, and the prior medical findings of the reviewing

11

psychologists, Drs. Snider and Cooley, pursuant to 20 C.F.R. § 404.1520c. (R. 19-20). Within his discussion, he addressed Plaintiff's self-report of "several intact activities of daily living from a mental health perspective in her function report," her normal mental status examinations during her primary care and urgent care visits, and her lack of "enrollment in formal psychiatry or psychotherapy during the relevant period of alleged disability." (R. 20, 244-51, 404-505, 511-15). Moreover, when considering the consistency of Plaintiff's symptoms, the ALJ determined that "claimant's allegation of disabling impairments [was] unsupported by the record." (R. 20). Specific to her mental health complaints, he noted Plaintiff "ha[d] not received counseling or formal psychiatry treatment, and she also reported intact capacity to engage in a wide variety of activities of daily living, including caring for her son with special needs." *Id*. The ALJ concluded that based on such findings and the evidence of record that "claimant's allegations of disabling impairments [were] not entirely supported by the evidence of record and the [RFC] adequately accounts for the claimant's limitations." (R. 20-21).

Although the ALJ could have been more explicit and specifically stated that Plaintiff's mental impairments did not result in work-related limitations, his discussion of the evidence is sufficient and allows for the Court to follow his reasoning. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. . . . [W]e cannot insist on

12

technical perfection."). Thus, the Court finds the ALJ properly considered Plaintiff's non-severe mental limitations in the RFC.

### The ALJ's Step-Four Analysis

Plaintiff further asserts the ALJ improperly performed the step-four analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), when determining she could perform her past relevant work. Step four of the sequential analysis consists of three phases: (1) the ALJ must evaluate a claimant's RFC; (2) the ALJ must determine the physical and mental demands of a claimant's past relevant work; and (3) the ALJ must then conclude whether a claimant has the ability to meet the job demands of the past relevant work using the determined RFC. *Id*. at 1023. For each phase, the ALJ is required to make specific findings. *Id*.

Plaintiff argues the ALJ failed to make specific findings at phase two of the step-four analysis, and the ALJ thereby "erroneously relied on the VE's testimony [that] Plaintiff [can] perform her past relevant work" at phase three. (Docket No. 12 at 15). At phase two, the ALJ may obtain factual information regarding a claimant's job demands from several sources, "including the claimant, the VE, or the Dictionary of Occupational Titles ("DOT")." *Roger L. F. v. Kijakazi*, 2023 WL 5278012, at *7 (N.D. Okla. Aug. 16, 2023), citing 20 C.F.R. § 404.1560(b)(2); *Best-Willie v. Colvin*, 514 Fed. Appx. 728, 737-38 (10th Cir. 2013). At phase three, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform [her] past relevant work." *Winfrey*, 92 F.3d at 1025. The ALJ, however, may rely on the VE's testimony at phases two and three of the step-four analysis. *See Adcock v. Comm'r, SSA*, 748 Fed. Appx. 842, 847 (10th Cir. 2018) (holding that the

ALJ may approvingly cite and rely on the VE's testimony to support his findings at phases two and three of the step-four analysis).

      The Court finds no error in the ALJ's phase two or phase three analysis at step four. Regarding phase two, the ALJ specifically referenced Plaintiff's hearing testimony and identified the jobs of customer service representative and customer service technical support representative as her past relevant work. (R. 21). He addressed the functional demands of the jobs by specifically noting their DOT numbers, exertional levels, and the specific vocational preparation ("SVP") levels of the jobs. *Id*. At the hearing, the ALJ questioned Plaintiff about the job demands of her past work. (R. 41-43). During his initial questioning of the VE, the ALJ confirmed the VE was "familiar with the vocational exhibits" and that she did not "need any additional vocational information[.]" (R. 61-62). He questioned the VE about Plaintiff's past relevant work, and the VE provided the DOT numbers, exertional levels, and SVP levels for the jobs. (R. 62). This was enough for the ALJ to satisfy the requirements at phase two.

      Regarding phase three, the ALJ presented the VE with several hypothetical questions during the hearing, including a hypothetical question which included the limitations the ALJ adopted in the RFC. Based upon that hypothetical question, the VE testified Plaintiff could perform the identified past relevant work as she actually performed it and as it was generally performed in the national economy. (R. 62-63). In the decision, the ALJ discussed the VE's testimony, setting out the DOT numbers, skill levels, and exertional levels of the positions. (R. 21). He determined the VE's testimony was consistent with the DOT, and that Plaintiff was therefore capable of performing her past relevant work as a customer service representative and a

14

customer service technical support representative. (R. 21-22). The Court finds no error in the ALJ's analysis at phase three.

In any event, the ALJ also made an alternative finding that Plaintiff could perform other work at step five – the jobs of cashier, merchandise marker, and mail room clerk. (R. 22-23). Thus, even if the ALJ committed an error under *Winfrey*, if the ALJ's alternative finding at step five is supported by the record, any step-four error is considered harmless. *See Best-Willie*, 514 Fed. Appx. at 738 ("[A]ny legal error at step four is harmless in view of the ALJ's alternate finding at step five that other jobs existed in significant numbers in the national economy [the claimant] could perform given her RFC[.]"), citing *Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four).

### The ALJ's Step-Five Determination

Plaintiff's step-five argument centers solely on her contention that she cannot perform the step-five jobs identified by the VE because the RFC did not include any mental limitations. (Docket No. 12 at 7-8). Although "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision[,]" *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991), the ALJ need only set forth hypothetical questions with those physical and mental impairments he accepted as true. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). Thus, because the ALJ presented a hypothetical question to the VE which included the limitations he adopted in the RFC (R. 62-63), there is no step-five error. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for the denial of benefits

15

because the question "included all the limitations the ALJ ultimately included in his RFC assessment."), citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993).

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 10th day of January, 2024.

_____
MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT